# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SPIN MASTER LTD., a Canadian corporation, and
SPIN MASTER TOYS UK LIMITED, a United
Kingdom corporation,

     *Plaintiffs*,

v.

AISHGJIA; BEIWEIXU POSTER;
CHENYIMINGDE; CONG946686; DADADAMA;
DAMINGXIANYOUFAJIANZHUGONGCHENGYOU
XIANGONGSI; DONGAELTEK; DOTUCA;
FANGMENGLI2024; FORESKY;
GUANGZHOULINGZHIKEJIYOUXIANGONGSI;
GUIZHOUSHENGDAIYIRIYONGBAIHUOXIAOSH
OUDIAN; GUYUANDZ; HOANGMINHHUNG3872;
IWORLD ART; KOOPDER; KUANDZ; LOVUVI;
LUAUTO; NOBUBA; ONLY GIFTS STORE;
PDSCHANGSHENG; QXCYSMYXGS;
RADIANT_PUC; RETABU; TALKING PRODUCTS
SHOP; TAORONG STORE; TOVUMI STORE;
TPLHOUSE; WANLINOP; WEISHIXIANYILIAN;
XIANYOUZHENGZHILONGMAOYISHANGHANG;
YIWUSHIJIANHAODIANZISHANGWUYOUXIANG
ONGSI1; YOUYUNZIXUNBU; YUANBINLEI;
ZHAZHAMO; FYX012; PODTRENDING.STORE;
RANGON88;  SMART BLOCKS HUB; TUNGLOBAL
DESIGN; CRAZYCAT; DOGOE; GAOHUIHUI;
HASITU; LILEEMINC; YUNBAIX; YUNDSY;
YUNHEI; CHUANKE; CI-ESSENTIALS;
COSMOGOODS;
DONGGUANGSHIYICHUNMAOYI; FANGDIANZHI
CO.LTD; GARB GLOW; GM UUU; GMAMN;
GUANGZHOUBAOTING;
GUANGZHOUDONGQIANGSHANGMAOYOUXIAN
GONGSI;

**SEALED**

Civil Action No.

GUANGZHOUZHONGHUICAIMAOYIYOUXIANGONGSI; GUPBOO; HAERBINSHENGYIMEIKEJIYOUXIANGONGSI; HAIFANDIANZI; HANDIED; HANDMADETNEONSIGN; HEFEIYANGSHEFUDIANZISHANGWU; HEXUXISHANGMAO; HILINGOTO; HMLAI; HONGDONGXIANTESADIANZI; IFAMILYCANVASUS; IMERE MALLET; JANEDREAM; JIAJILIMAOYI; JIANWEISTATIONERY; JIAYUANDA; JINANTONGLONGJIANGSHANGMAOXIAOSHOU YOUXIANGONGSI; JINANYEHUYUWANGLUOKEJI; JINANZHANWEIXINXIKEJI; JINGXINHUJIANKANGGUANLI; JOJIEUIO; JORIAE.LLC; JOYHOME; JUICCEE; JWDX; KANGLINGDIANZI; KJMMCO.LTD; KOSMO LIGHTING CO.; KUNMINGHUNREDIANZISHANGWUYOUXIANGONGSI; KUNMINGTAOFUWANGLUOKEJIYOUXIANGONGSI; LANENMAOYIYOUXIANGONGSI; LICUN001; LINLINGLIU; LIULONG; LIVNXT; LONGHAIXINGHUIGONGYINGLIAN; LOVELYWHOLESALE; LTS EMIRA; LWITHSZG CO.LTD; MAICHUFEN; MAKODAX; MEIYUANYOUXIAMENGONGYINGLIAN YOUXIANGONGSI; MIEKOR; MIOLADY; NANNINGHUICHUANGWANGLUOKEJIYOUXIAN GONGSI; NANTONGPANGGONGMAOYI; NIUGUANDE CO.LTD; NIUPI; PINGPINGANAN; PUTIANSHIAGENGMIMAOYIYOUXIANGONGSI; PUTIANSHICHENGXIANGQULINYUPENGMAOYI YOUXIANGONGSI; QCSSHOU; QINGDAORINUO; QINGSHENJIHE; QUALITY LIFE STORE; QUFUWALQ; QVERTONES; QZUITOPZ; REFINED RAIMENT; ROSEHOME; RYANK; SEAYI TRADING COMPANY;

SHENZHENSHIHONGXINYIMAOYIYOUXIANGON
GSI; SHENZHENSHIJIANGJINGWANJUYOU
XIANGONGSI; SHIOGB;
SHISHIJIUTONGGEMAOYIYOUXIANZERENGON
GSI; SHIUELIRG; SHIZHENYANG;
SHUANGXISHANG; SHUIYOUMU; SHUOJINUS;
SICHUANXINLONGMINGKEKEJIYOUXIANGONG
SI; SIMUWENHUA; SJXX; SPARSAIN; SUIYUN;
SUNNY-MALL; SUPERFINDINGS, SYTHERS
DIRECT; TAIYUANQINCANGKEJI;
TAIYUANSHIXUKONGSHANG;
TIANJINJIECHENCHUANMEI; TYUONG;
WALQUENQFUL; WENY STORE; WEQRIOPUTY;
WHOLESALE WIGS888; YAXI CO.LTD;
ZARDENAL; ZHENGXIANGYU;
ZHIJIANGSHIYENENGSHANGMAO; and
ZMZMSKGSI DEPARTMENT MALL,

*Defendants.*

# COMPLAINT

Plaintiffs Spin Master Ltd. and Spin Master Toys UK Limited (collectively, "Spin Master" or "Plaintiffs"), hereby bring the present action against Defendants Aishgjia; beiweixu poster; Chenyimingde; cong946686; dadadama; DaMingXianYouFaJianZhuGongChengYouXianGongSi; DongAEltek; Dotuca; fangmengli2024; ForeSky; Guangzhoulingzhikejiyouxiangongsi; guizhoushengdaiyiriyongbaihuoxiaoshoudian; GUYUANDZ; hoangminhhung3872; iWorld Art; koopder; Kuandz; Lovuvi; LUAUTO; Nobuba; Only Gifts Store; Pdschangsheng; Qxcysmyxgs; Radiant_PUC; Retabu; Talking products shop; taorong store; Tovumi store; TPLHOUSE;

WanLinOP;Weishixianyilian; Xianyouzhengzhilongmaoyishanghang; yiwushijianhaodianzishangwuyouxiangongsi1; youyunzixunbu; yuanbinlei; ZHAZHAMO; fyx012; podtrending.store; rangon88; Smart Blocks Hub; Tunglobal Design; Crazycat; DOGOE; GAOHUIHUI; HASITU; LILEEMINC; YUNBAIX; YUNDSY; YUNHEI; Chuanke; Ci-Essentials; CosmoGoods; Dongguangshiyichunmaoyi; Fangdianzhi Co.Ltd; Garb Glow; gm uuu; GMAmn; Guangzhoubaoting; Guangzhoudongqiangshangmaoyouxiangongsi; Guangzhouzhonghuicaimaoyiyouxiangongsi; GUPBOO; haerbinshengyimeikejiyouxiangongsi; haifandianzi; Handied; Handmadetneonsign; Hefeiyangshefudianzishangwu; HeXuXiShangMao; Hilingoto; Hmlai; HongDongXianTeSaDianZi; iFamilyCanvasUs; Imere Mallet; JANEDREAM; Jiajilimaoyi; JianWeiStationery; Jiayuanda; Jinantonglongjiangshangmaoxiaoshouyouxiangongsi; jinanyehuyuwangluokeji; jinanzhanweixinxikeji; JingXinHuJianKangGuanLi; JOJIEUIO; JORIAE.LLC; JOYhome; JUICCEE; JWDX; KangLingDianZi; KJMMCo.ltd; Kosmo Lighting Co.; Kunminghunredianzishangwuyouxiangongsi; KunMingTaoFuWangLuoKeJiYouXianGongSi; Lanenmaoyiyouxiangongsi; licun001; linlingliu; LIULONG; LivNxt; Longhaixinghuigongyinglian; LovelyWholesale; LTS EMIRA; LWITHSZG Co.Ltd; Maichufen; Makodax; MeiyuanyouXiamenGongyinglian Youxiangongsi; Miekor; Miolady;

nanninghuichuangwangluokejiyouxiangongsi; nantongpanggongmaoyi; NIUGUANDE Co.Ltd; Niupi; Pingpinganan; Putianshiagengmimaoyiyouxiangongsi; PuTianShiChengXiangQuLinYuPengMaoYiYouXianGongSi; QCSshou; Qingdaorinuo; Qingshenjihe; Quality Life Store; QUFUWALQ; Qvertones; Qzuitopz; Refined Raiment; RoseHome; RyanK; SEAYI Trading Company; Shenzhenshihongxinyimaoyiyouxiangongsi; SHENZHENSHIJIANGJINGWANJUYOU XIANGONGSI; Shiogb; Shishijiutonggemaoyiyouxianzerengongsi; Shiueling; SHIZHENYANG; Shuangxishang; Shuiyoumu; Shuojinus; Sichuanxinlongmingkekejiyouxiangongsi; SiMuWenHua; SJXX; Sparsain; Suiyun; Sunny-mall; SUPERFINDINGS; Sythers Direct; TaiYuanQinCangKeJi; TaiYuanShiXuKongShang TianJinJieChenChuanMei; Tyuong; WALQUENQFUL; WENY Store; WEQRIOPUTY; wholesale wigs888; YAXI Co.Ltd; Zardenal; Zhengxiangyu; zhijiangshiyenengshangmao; and Zmzmskgsi Department Mall (collectively, "Defendants") and alleges as follows:

## I. JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure since each of the Defendants directly targets business activities toward consumers in the United States through at least the fully interactive, e-commerce stores operating under the seller aliases identified above (the "Seller Aliases").   Specifically, Defendants have targeted sales to residents in the United States by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States,  accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiffs' federally registered trademarks to residents in the United States.

## II. INTRODUCTION

3.      This action has been filed by Plaintiffs to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including apparel and other products, using infringing and counterfeit versions of Plaintiffs' federally registered trademarks (the "Counterfeit Products").  Spin Master Corp. is the parent company of Plaintiffs Spin Master Ltd. and Spin Master Toys UK Limited. Spin Master Toys UK Limited is a subsidiary of Spin Master Ltd. Spin Master is a leading global

children's entertainment company that creates, designs, manufactures, and markets a diversified portfolio of innovative toys, games, products, and entertainment properties. Spin Master Corp. acquired Rubik's Brand Ltd., the previous holder of the rights to the RUBIK'S Trademarks. Through this acquisition, Spin Master Corp. and Plaintiffs have gained significant common law trademark and other rights in their RUBIK'S Trademarks and Rubik's Products through their predecessor's use, advertising, and promotion. Spin Master Toys UK Limited is the lawful assignee and exclusive owner of the RUBIK'S Trademarks. Spin Master Ltd. is responsible for the enforcement of intellectual property rights that are controlled and/or owned by Spin Master Corp. and its subsidiaries, including the RUBIK'S Trademarks. Plaintiffs Spin Master Ltd, a Canadian Corporation and Spin Master Toys UK Limited, a United Kingdom Corporation are referred to herein together or individually as "Spin Master."

4.     Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the

full scope of their counterfeiting operation. E-commerce platforms used by Defendants – including PayPal, Amazon, eBay, Temu, and Walmart – fail to adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to use false or inaccurate names and addresses when registering their e-commerce stores. Further, these e-commerce platforms continue to be unable or unwilling to prevent the rampant and flagrant listing of Counterfeit Products on their platforms. Thus, Plaintiffs are forced to file this action to combat Defendants' counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products on U.S.-facing e-commerce platforms. Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs Spin Master Ltd. and Spin Master Toys UK Limited**

5.     Plaintiff Spin Master Ltd. is a Canadian corporation with its principal place of business at 225 King Street West, Toronto, Ontario, Canada.

6.     Plaintiff Spin Master Toys UK Limited is a United Kingdom corporation with an address of Meridian House, Fieldhouse Lane, Marlow, SL7 1TB United Kingdom.

7.     Spin Master Corp. is the parent company of Plaintiffs Spin Master Ltd. and Spin Master Toys UK Limited. Spin Master Toys UK Limited is a subsidiary of Spin Master Ltd.

8.     Spin Master is a leading global children's entertainment company that creates, designs, manufactures, and markets a diversified portfolio of innovative toys, games, products, and entertainment properties. Since 2000, Spin Master has received 96 Toy Industry Association (TIA) Toy of The Year (TOTY) nominations with 28 wins across a variety of product categories. Spin Master has been recognized with 13 TOTY nominations for Innovative Toy of the Year, more than any of its competitors. Spin Master is among a limited number of companies that not only develop and produce global entertainment properties, characters, and content, but also monetize that content through the creation, sale, and licensing of products.

9.     One of the most popular Spin Master brands is Rubik's, a 3-D cube-shaped combination puzzle that consists of twisting and turning small cubes to return the 3-D cube to its original state with every side having one solid color, which comes in a variation of sizes, including Rubik's Cube 3x3 as shown in Figure 1 below with packaging ("Rubik's Products").



*Figure 1*

      10.     On January 4, 2021, Spin Master Corp. acquired Rubik's Brand Ltd., the previous holder of the rights to the RUBIK'S Trademarks.  Through this acquisition, Spin Master Corp. and Plaintiffs have gained significant common law

trademark and other rights in their RUBIK'S Trademarks and Rubik's Products through their predecessor's use, advertising, and promotion.

11.     Rubik's sales have generated millions of dollars in revenue for Spin Master.  Rubik's has been an enormously popular and iconic game for years, driven by the game's challenging and innovative design.  Among the purchasing public, genuine Rubik's Products are instantly recognizable as such.  The Rubik's brand has been a global success that resonates with children and adults worldwide, making Rubik's one of the most recognizable puzzles around the world.

12.     The Rubik's trademark was first used in 1980, and products have continuously been sold under the Rubik's trademark and other trademarks (collectively, the "RUBIK'S Trademarks").  As a result of this long-standing use by Spin Master and its predecessor, strong common law trademark rights and goodwill have amassed in the RUBIK'S Trademarks.  The RUBIK'S Trademarks are famous marks and valuable assets of Spin Master.

13.     Spin Master Toys UK Limited is the lawful assignee and exclusive owner of the RUBIK'S Trademarks.  Spin Master Ltd. is responsible for the enforcement of intellectual property rights that are controlled and/or owned by Spin Master Corp. and its subsidiaries, including the RUBIK'S Trademarks.

14.     The RUBIK'S Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark |
|---|---|
| 1,242,974 | RUBIK'S CUBE |
| 1,265,094 |  |
| 7,033,371 | RUBIK'S |

15.    The above U.S. registrations for the RUBIK'S Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065.  Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the RUBIK'S Trademarks are conclusive evidence of the validity of the RUBIK'S Trademarks and of the registrations of the RUBIK'S Trademarks, of Spin Master Toys UK Limited's ownership of the RUBIK'S Trademarks, and of Spin Master's exclusive right to use the RUBIK'S Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065.

16.    The RUBIK'S Trademarks are distinctive when applied to Rubik's Products, signifying to the purchaser that the products come from Spin Master and are manufactured to Spin Master's quality standards.   Whether Spin Master manufactures the products themselves or contracts with others to do so, Spin Master

has ensured that products bearing the RUBIK'S Trademarks are manufactured to the highest quality standards.

17.    The RUBIK'S Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Rubik's Products have enabled the Rubik's brand to achieve widespread recognition and fame.  The widespread fame, outstanding reputation, and significant goodwill associated with the Rubik's brand have made the RUBIK'S Trademarks valuable assets of Spin Master.

18.    Spin Master has expended substantial time, money, and other resources in advertising and promoting the RUBIK'S Trademarks.  In fact, Spin Master has expended millions of dollars in advertising, promoting, and marketing featuring the RUBIK'S Trademarks.  Rubik's Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs.  As a result, products bearing the RUBIK'S Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Spin Master.  Rubik's Products have become among the most popular of their kind in the U.S. and the world.  The RUBIK'S Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.  As such, the goodwill associated with the RUBIK'S Trademarks is of incalculable and inestimable value to Spin Master.

19.    Genuine Rubik's Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Rubik's brand.

20.    Rubik's Products are distributed and sold to consumers through retailers throughout the United States and through the rubiks.com webstore.  Sales of Rubik's Products via the rubiks.com webstore are significant.  The rubiks.com webstore features proprietary content, images, and designs exclusive to Spin Master.

**The Defendants**

21.    Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases and/or other seller aliases not yet known to Plaintiffs.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Rule 17(b) of the Federal Rules of Civil Procedure.

22.    On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed hereto. Tactics used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their counterfeit network.  If Defendants

provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

23.     The success of Plaintiffs' brand has resulted in significant counterfeiting of the RUBIK'S Trademarks.   In recent years, Plaintiffs have identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as PayPal, Amazon, eBay, Temu, and Walmart, including the e-commerce stores operating under the Seller Aliases.  The Seller Aliases target consumers throughout the United States.   At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD")[1]  The primary source of all those counterfeits, the OECD and others say, is China.[2]

24.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities,

[1] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.
[2] *Id. See Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection.

allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[3]  Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[4]  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[5]  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6]  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

25.    Defendants have targeted sales to the United States residents by setting up and operating e-commerce stores that target United States consumers using one

---

[3] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[4] *Id.* at p. 22.

[5] Combating Trafficking in Counterfeit and Pirated Goods, *supra* note 3, at 22.

[6] *Id.* at p. 39.

[7] Chow, *supra* note 3, at p. 186-87.

or more Seller Aliases, offer shipping to the United States, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of the United States.

26.    Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales of Counterfeit Products by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it difficult for consumers to distinguish such stores from an authorized retailer.  On information and belief, Plaintiffs have not licensed or authorized Defendants to use any of the RUBIK'S Trademarks in the United States, and none of the Defendants are authorized retailers of genuine Rubik's Products in the United States.

27.    Many Defendants also deceive unknowing consumers by using the RUBIK'S Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Rubik's Products.  Other e-commerce stores operating under Seller Aliases omit using the RUBIK'S

Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Rubik's Products.

28.    E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

29.    E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products.  Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

30.    Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression.  Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences.  The combination of all Defendants engaging in the same illegal activity in the same time span causes a

collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

31.    E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

32.    Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiffs' enforcement.  E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiffs.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

33.    Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Plaintiffs, knowingly and willfully used and continue to use the

RUBIK'S Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States over the Internet.

34.    Defendants' unauthorized use of the RUBIK'S Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114)

35.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

36.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered the RUBIK'S Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The RUBIK'S Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Rubik's Products offered, sold, or marketed under the RUBIK'S Trademarks.

37.    Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and

advertising products using counterfeit reproductions of the RUBIK'S Trademarks without Plaintiffs' permission.

38.    Plaintiffs are the exclusive owners of the RUBIK'S Trademarks. Plaintiffs' United States Registrations for the RUBIK'S Trademarks are in full force and effect. On information and belief, Defendants have knowledge of Plaintiffs' rights in the RUBIK'S Trademarks and are willfully infringing and intentionally using counterfeits of the RUBIK'S Trademarks. Defendants' willful, intentional, and unauthorized use of the RUBIK'S Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

39.    Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40.    Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of the RUBIK'S Trademarks.

41.    The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

42.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

43.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs, or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

44.     By using the RUBIK'S Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

45.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

46.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the associated goodwill of Plaintiffs' brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the RUBIK'S Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Rubik's Product or is not authorized by Plaintiffs to be sold in connection with the RUBIK'S Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Rubik's Product or any other product produced by Plaintiffs, that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the RUBIK'S Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization,

control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d.  further infringing the RUBIK'S Trademarks and damaging Plaintiffs' goodwill; and

e.  manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of the Rubik's trademarks, including the RUBIK'S Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof.

2)  Entry of an Order that, upon Plaintiffs' request, those with notice of the injunction including, without limitation, any online marketplace platforms such as PayPal, Amazon, eBay, Temu, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the RUBIK'S Trademarks;

3)  That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the RUBIK'S Trademarks be increased

by a sum not exceeding three times the amount thereof as provided by 15 U.S.C.
§ 1117;

4) In the alternative, that Plaintiffs be awarded statutory damages for willful
trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for
each and every use of the RUBIK'S Trademarks;

5) That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.


Dated this 24th day of September 2025.     Respectfully submitted,

/s/ *Carrie A. Hanlon*
Amy C. Ziegler
Ga. Bar No. 676426
E-mail: aziegler@gbc.law
Justin R. Gaudio
Ga. Bar No. 434363
E-Mail: jgaudio@gbc.law

200 West Madison Street, Suite 2100
Chicago, Illinois 60606
Telephone: 312-360-0080
Facsimile: 312-360-9315
GREER, BURNS & CRAIN, LTD.

Carrie A. Hanlon
Ga. Bar No. 289725
E-mail: carrie@sladlaw.com
Jason H. Cooper
Ga. Bar No. 778884
E-mail: jason@sladlaw.com

1397 Carroll Drive
Atlanta, GA 30318
Telephone: (404) 252-0900
Facsimile: (404) 252-0970
THE SLADKUS LAW GROUP

***Attorneys for Plaintiffs***